RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE _____

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

JASON MIXON                                    CIVIL ACTION NO. 07-1063

VERSUS                                         MAGISTRATE JUDGE HANNA

ANADARKO PETROLEUM                             BY CONSENT OF THE PARTIES
CORPORATION, ET AL.

## MEMORANDUM RULING

This case comes before the Court by consent, pursuant to 28 U.S.C. §636, for disposition.  Pending is a motion for summary judgment filed by defendant National Oilwell Varco, L.P./Hydra Rig (hereinafter NOV) (Rec. Doc. 99).  The motion is opposed.  Considering the evidence, the law, and the arguments of the parties, and for the reasons which follow, the Court DENIES the motion of NOV.

## I.    FACTUAL BACKGROUND

The plaintiff, Jason Mixon, was an employee of Halliburton Energy Services, Inc. (hereinafter Halliburton), who was working in the course and scope of his employment as a coiled tubing operator when he was injured in an accident on June 29, 2006.  The Halliburton crew was working pursuant to a contract with Anadarko Petroleum Corporation (hereinafter Anadarko) aboard the semi-

submersible drilling rig NOBLE PAUL ROMANO located on the Outer Continental Shelf off the coast of Louisiana.

At the time of the accident in question, the plaintiff and his crew were disassembling a coiled tubing reel (hereinafter CTR) on a multi-part unit designed and custom built by NOV for Halliburton.  The CTR was of such size and weight that it could not be moved in one piece, and consequently, it was necessary to disassemble the CTR in order for it to be moved on or off location.  Part of the disassembly process included removing bolts and splitting the reel so it could be lifted.  As designed and manufactured, if the CTR was on the deck, access to these bolts could be obtained without the necessity of a ladder or climbing on the equipment.  However, on this particular job, the rig's crane could not put the CTR in the proper location directly on the deck.  Therefore, skid beams manufactured by Devin were utilized for it to be located properly.

Mounting the CTR on the skid beams elevated the CTR about four feet above where it would have been had it been placed on the deck.  As a result, in order to access the bolts to split the reel, the plaintiff had to utilize a ladder to actually climb on the equipment itself.  After he had removed the bolts, while he was trying to descend from the CTR to the ladder, he slipped on a piece of iron that was not intended as a foothold and injured his knee.

2

## II.    CONTENTIONS OF THE PARTIES

The CTR was one of two different reels that were designed and custom built

by NOV for Halliburton. The one which is not the subject of this lawsuit was

known as the "Thunderhorse" reel. It was thirty inches taller than the CTR at

issue in this lawsuit, and, although not called for in the design specifications, it

had folding work platforms installed at the behest of Halliburton to access the

equipment, including the bolts to split the reel. The CTR involved in the instant

case had no such work platforms.

The plaintiff claims that the absence of these work platforms renders the

CTR unreasonably dangerous within the meaning of the Louisiana Products

Liability Act. NOV contends that platforms were not called for by Halliburton

and, in fact, Halliburton decided not to have the platforms installed during the

manufacturing phase but would add them after delivery if necessary. NOV argues

that it did not know that Halliburton intended for the CTR to be placed on skid

beams and that no work platform would have been necessary had the CTR simply

been placed on the deck instead of on skid beams.

It is undisputed that, while the CTR was on the job location, NOV was not

consulted concerning the use of a ladder or other device to access the reel. There

were no NOV employees on the location at the time Halliburton was performing

3

its work for Anadarko, and the plaintiff concedes that there is no evidence that

NOV had any knowledge that the CTR was going to be placed on the skid beams.

The plaintiff testified that he complained to Halliburton about the difficulty

accessing the reel and even suggested that Halliburton's employees needed the

work platforms. Despite the fact that Halliburton knew such platforms could be

installed by NOV in the manufacturing process, no platforms were requested even

after the CTR was on site and mounted on the skid beams.

## III.   SUMMARY JUDGMENT STANDARD

"A party against whom relief is sought may move, with or without

supporting affidavits, for summary judgment on all or any part of the claim."[1]

Summary judgment is appropriate if "the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law."[2]

"When a motion for summary judgment is properly made and supported, an

opposing party may not rely merely on allegations or denials in its own pleading;

rather, its response must – by affidavits or as otherwise provided in this rule – set

---

[1]   Fed. R. Civ. P. 56(b).

[2]   Fed. R. Civ. P. 56(c)(2).

out specific facts showing a genuine issue for trial.  If the opposing  party does not

so respond, summary judgment should, if appropriate, be entered against that

party."[3]

As summarized by the Fifth Circuit:

When seeking summary judgment, the movant bears the initial
responsibility of demonstrating the absence of an issue of material
fact with respect to those issues on which the movant bears the
burden of proof at trial.  However, where the non-movant bears the
burden of proof at trial, the movant may merely point to an absence of
evidence, thus shifting to the non-movant the burden of
demonstrating by competent summary judgment proof that there is an
issue of material fact warranting trial.  Only when "there is sufficient
evidence favoring the nonmoving party for a jury to return a verdict
for that party"is a full trial on the merits warranted.[4]

The Supreme Court also provided guidance on the obligation of the non-

moving party who bears the burden of proof at trial:

Rule 56(e) provides that judgment "shall be entered" against the
nonmoving party unless affidavits or other evidence "set forth
specific facts showing that there is a genuine issue for trial."  The
object of this provision is not to replace conclusory allegations of the
complaint or answer with conclusory allegations of an affidavit
Rather, the purpose of Rule 56 is to enable a party who believes there
is no genuine dispute as to a specific fact essential to the other side's

---

[3]      Fed. R. Civ. P. 56(e)(2).

[4]      *Lindsey v Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994)
(internal citations omitted).

case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.[5]

The Fifth Circuit has further elaborated:

[The parties'] burden is not satisfied with "some metaphysical doubt as to the material facts," by "conclusory allegations," by "unsubstantiated assertions," or by only a "scintilla" of evidence.  We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts.  We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.
                                              *****
[S]ummary judgment is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant."[6]

## IV.    APPLICABLE LAW AND ANALYSIS

The parties agree that the claims against NOV are based on Louisiana law

through the application of the Outer Continental Shelf Lands Act (OCSLA), 43

U.S.C. § 1331 *et. seq.*  "OCSLA adopts the law of the adjacent state (Louisiana) as

surrogate federal law, to the extent that it is not inconsistent with other federal

---

[5]      *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990) (internal citations and quotations omitted).

[6]      *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (internal citations and quotations omitted).

laws and regulations.  Thus the law applicable is 'federal law, supplemented by state law of the adjacent state.'"[7]

State products liability law is to be applied in cases governed by OCSLA, where, as here, maritime law is inapplicable.[8]  The Louisiana Products Liability Act ("LPLA"), La. R.S. 9:2800.51, *et seq.*, establishes the "exclusive theories of liability for manufacturers for damage caused by their products."[9]  Under of the LPLA:

> The manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of a product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity.[10]

Thus, a plaintiff asserting a products liability action against a manufacturer faces a two-tiered burden.  The plaintiff must show:  (1) that his damages were proximately caused by a characteristic of the product that renders it unreasonably dangerous, and (2) that his damages arose from a reasonably anticipated use of the

---

[7]     *Fruge v. Parker Drilling Co.*, 337 F.3d 558, 560 (5th Cir. 2003) (citations omitted); see also 43 U.S.C. §333(a)(2)(A).

[8]     *Texaco Exploration & Production, Inc. v. Amclyde Engineered Products, Co., Inc.*, 448 F.3d 760, 771-775 (5th Cir. 2006).

[9]     La. R.S. 9:2800.52; *Kampen v. American Isuzu Motors, Inc.*, 157 F.3d 306, 309 (5th Cir. 1998).

[10]    La. R.S. 9:2800.54(A).

product.[11]  If a plaintiff's damages did not arise from a reasonably anticipated use of the product, then the "unreasonably dangerous" question need not be reached.[12]

The LPLA defines a reasonably anticipated use as "a use or handling of a product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances."[13]  This objective inquiry requires the court to ascertain what uses of its product the manufacturer should have reasonably expected at the time of manufacture.[14]  "Reasonably anticipated use does not encompass misuses in direct contravention of a warning or where the

---

[11]      *Kampen*, 157 F.3d at 309.  See, also, La. R.S. 9:2800.54(D); *Johnson v. Black & Decker U.S., Inc.*, 29,996 (La. App. 2 Cir. 10/31/97), 701 So.2d 1360, 1362, *writ denied*, 1997-2971 (La. 02/06/98), 709 So.2d 741.

[12]      *Kampen*, 157 F.3d at 309, citing *Johnson*, 701 So.2d at 1366; *Delphen v. Department of Transportation and Development*, 94-1261 (La. App. 4 Cir. 05/24/95), 657 So.2d 328, 334, *writ denied*, 95-2116 (La. 11/17/95), 663 So.2d 716, *writ denied*, 95-2124 (La. 11/17/95), 663 So.2d 717.

[13]      La. R.S. 9:2800.53(7).

[14]      See *Broussard v. Procter & Gamble, Co.*, 463 F. Supp. 2d 596, 605 (W.D. La. 2006); *Myers v. American Seating Co.,* 93-1350 (La. App. 1 Cir. 05/20/94), 637 So.2d 771, 775, *writ denied*, 94-1569 (La. 10/07/94), 644 So.2d 631, *writ denied*, 94-1633 (La. 10/07/94), 644 So.2d 632; see also John Kennedy, A Primer on the Louisiana Products Liability Act, 49 La.L.Rev. 565, 585-86 (1989).

danger should have been obvious to the experienced as well as the ordinary consumer."[15]

The jurisprudence in this Circuit has set forth four factors to determine whether a use was reasonably anticipated:

(1)     Whether the injured party used the product in a manner that was obviously dangerous;

(2)     What the user was instructed to do and warned not to do with respect to the use of the product;

(3)     Whether the use of the product was expressly warned against in the product's labeling (or operations manual) and the language of that warning; and

(4)     The sophistication/experience of the user-purchaser.[16]

If the unreasonably dangerous question is reached, a claimant can prove that a product was unreasonably dangerous in four different ways: (1) in construction or composition; (2) in design; (3) because of an inadequate warning; or (4)

---

[15]     *Kampen*, 157 F. 3d at 309.  See, also, *Broussard*, 463 F.Supp.2d at 605-606; *Frith v. John Deere Co.*, 955 F.Supp. 663, 666 (W.D. La. 1996); *Hunter on behalf of Hunter v. Knoll Rig & Equipment Mfg. Co. Ltd.*, 70 F.3d 803, 807 (5th Cir. 1995).

[16]     See, *Broussard*, 463 F.Supp.2d at 606, citing *Hunter*, 70 F.3d at 806; *Lockart v Kobe Steel, Ltd. Const. Mach. Div.*, 989 F.2d 864, 866 (5th Cir 1993); *Laird v. Deep Marine Technology, Inc.*, 2005 WL 22949, 2 (E.D. La. 2005); *Frith*, 955 F. Supp. at 663.

because of nonconformity to an express warranty.[17]  Furthermore, if the unreasonably dangerous question is reached, the unreasonably dangerous condition of the product must be the "most probable cause" of the alleged injury.[18]

In the instant case, notwithstanding the increase in elevation due to the skid mounted configuration, NOV concedes (and photographs depict) that it was necessary to climb on the CTR unit even if it was on the deck for certain tasks; therefore, it was reasonable for the manufacturer to expect someone would climb on the unit itself.  NOV points to a Job Safety Analysis performed by Halliburton which suggested there was no need for work platforms to safely access the bolts on the CTR to split the reel.  The plaintiff testified that he complained to Halliburton that the absence of work platforms was not safe.  However, he was, in essence, instructed to access the bolts utilizing the ladder to climb on the equipment.  This effectively required him to use the angled iron as a foothold, even though it was not intended as such, in order to be able to reach the top step of the ladder with one foot while his other foot was on the angled iron.  There is no evidence that there were any warnings given by NOV.  Finally, although NOV

---

[17]     La. R. S. 9:2800.54(B).

[18]     *Wheat v. Pfizer, Inc.*, 31 F.3d 340, 342 (5th Cir. 1994).

contends Halliburton is a "sophisticated purchaser," the issue is the degree or sophistication or experience of the <u>user</u>, i.e. the plaintiff himself.

Given that there is a factual dispute concerning whether the plaintiff was using the product in a manner that was "obviously dangerous," the Court finds that there is a genuine issue of material fact as to whether the plaintiff's utilization of the angled iron, which was not intended to be a foothold, as a means to access the top step of a stepladder that was required because the CTR had been elevated by the skid beams, was a "reasonably anticipated use" of the CTR.

Further, even if the Court were to conclude that utilizing the angled iron as a foothold was a reasonably anticipated use, there is a genuine issue as to whether the absence of work platforms creates an unreasonably dangerous characteristic in the CTR. In order to prevail on a claim that a product is unreasonably dangerous in design, the plaintiff must show that another way to design the product existed, that the alternative design would have been significantly less likely than the chosen design to cause the damage, and that the risk avoided by the alternative design outweighed the burden of its adoption.[19]

---

[19]     *Jenkins v. International Paper Co.*, 41,566 (La. App 2 Cir. 11/15/06) 945 So.2d 144, 151; *Johnson v. T.L. James Company, Inc.*, 00-1365 (La. App. 1 Cir. 9/28/01), 809 So.2d 287, 290; *Willis v. Medders*, 99-2170 (La. App. 4 Cir. 5/24/00), 765 So.2d 1093, 1096, *writ granted and decision set aside on other grounds*, 2000-2507 (La. 12/08/00), 775 So.2d 1049.

The evidence establishes that there was an alternative design as it was used on the "Thunderhorse" reel and ultimately placed on the CTR in question after the accident.  However, there is a genuine issue as to whether that alternative design would have been significantly less likely to cause the damage given the manufacturer's contention that its intended use was for the CTR to be placed on the deck and the presence of a work platform may have actually been an impediment to working on the CTR.

As for NOV's contentions concerning Halliburton's involvement in design decisions, these present issues of fault and superceding/intervening cause which are uniquely within the province of the jury to determine.

Therefore, because there exist genuine issues in dispute concerning whether the utilization of the angled iron as a foothold to access a stepladder was a reasonably anticipated use, as well as whether the design of the CTR without work platforms rendered it unreasonably dangerous, the motion will be denied.

Signed at Lafayette, Louisiana, this 9th day of April, 2010.

PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

12