RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 07/06/10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| JASON MIXON | CIVIL ACTION NO. 07-1063 |
| VERSUS | MAGISTRATE JUDGE HANNA |
| ANADARKO PETROLEUM CORPORATION, ET AL. | BY CONSENT OF THE PARTIES |

## MEMORANDUM RULING

This case comes before the court by consent, pursuant to U.S.C. § 636, for disposition. Pending is a motion for summary judgment filed by defendant SAS Industries, Inc. (hereinafter SAS) (Rec. Doc. 130). The motion is opposed. Considering the evidence, the law, and the arguments of the parties, and for the reasons which follow, the motion is GRANTED.

**I. Factual Background**

The plaintiff, Jason Mixon, was employed by Halliburton Energy Services, Inc. and working in the course and scope of his employment as a coiled tubing operator when he was injured in an offshore accident on June 29, 2006. The Halliburton crew was working pursuant to a contract with Anadarko Petroleum Corporation (hereinafter Anadarko) aboard the semi-submersible drilling rig NOBLE PAUL ROMANO located on the Outer Continental Shelf off the coast of Louisiana.

At the time of the accident, the plaintiff and his crew were disassembling a coiled tubing reel ("CTR") on a multi-part unit designed and custom built for Halliburton. The CTR was of such size and weight that it could not be moved in one piece; consequently, it was necessary to disassemble the CTR in order for it to be moved on or off location. Part of the disassembly process included removing bolts and splitting the reel so it could be lifted. As designed and manufactured, if the CTR was on deck, access to these bolts could be obtained without the

necessity of a ladder or climbing equipment. However, on this particular job, the rig's crane could not put the CTR in the proper location directly on the deck. Therefore, skid beams, manufactured and installed by Devin Rental Tools, Inc. (hereinafter Devin), were used to position the CTR properly.

Mounting the CTR on the skid beams elevated the CTR about four feet above where it would have been positioned had it been placed on the vessel's deck. As a result, in order to access the bolts to split the reel, the plaintiff had to use a ladder to actually climb on the equipment itself. After he had removed the bolts, while he was trying to descend from the CTR to the ladder, he slipped on a piece of iron that was not intended as a foothold and injured his knee.

## II. Contentions of the Parties

The plaintiff alleges in his complaint that SAS was hired by Anadarko to provide engineering services that determined the size of the skid beams on which the CTR would be placed. He contends that SAS should have known that the elevated height of the CTR posed a risk to Halliburton employees working on the equipment, and that SAS was negligent in failing to bring this risk to the attention of Noble, Anadarko, or Devin.

In its motion for summary judgment (Rec. Doc. 130), SAS claims that it was hired by Anadarko to assist in planning "coiled tubing contingency operations." SAS acknowledges that part of its job was to determine the placement of Halliburton's CTR on the rig, and that it was part of a team that visited the rig to evaluate CTR placement options before the rig was deployed; however, SAS argues it was Halliburton that ultimately proposed the use of skid beams to elevate the CTR—a suggestion Halliburton based on its prior successful experience with a similar system. SAS admits it never discussed the safety implications of elevating the

CTR with any of the entities involved. It is undisputed there were no representatives from SAS onboard the rig at the time of the accident.

In his response (Rec. Doc. 134), the plaintiff does not contest the evidence offered by SAS. Instead, he responds by emphasizing evidence of SAS's extensive experience in the field of coiled tubing operations; the fact that SAS was an "integral part of the decision making team" that raised the CTR off of the deck; and SAS's acknowledgement that it did not discuss safety issues implicated by the disassembly of the CTR at an elevated height. The plaintiff attached exhibits containing copies of communications among SAS, Noble, and Devin, in which the entities discuss the plan to use the skidding system, and diagram the proposed equipment placement. These communications state that Anadarko had approved the described use of the system and the placement of equipment. The plaintiff does not present evidence to suggest that Noble, Anadarko, or Devin were unaware of the risk created by elevating the CTR, or evidence regarding what action Noble, Anadarko, or Devin would have taken had they known of the risk.

As fully explained below, the undersigned finds that this evidence is insufficient to show that an issue of material fact exists regarding whether SAS had a duty to inform Noble, Anadarko, and Devin that the elevation of the CTR posed a risk of injury to workers performing activities on the reel, or whether this failure caused the plaintiff's accident. Accordingly, SAS is entitled to judgment as a matter of law, and its motion for summary judgment is therefore granted.

### III. Summary Judgment Standard

"A party against whom relief is sought may move, with or without supporting affidavits, for summary judgment on all or any part of the claim."[1] Summary judgment is appropriate if

---

[1] Fed. R. Civ. P. 56(b).

"the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[2]

"When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."[3]

As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted.[4]

The Supreme Court also provided guidance on the obligation of the non-moving party who bears the burden of proof at trial:

> Rule 56(e) provides that judgment "shall be entered" against the nonmoving party unless affidavits or other evidence "set forth specific facts showing that there is a genuine issue for trial." The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.[5]

The Fifth Circuit has further elaborated:

---

[2] Fed. R. Civ. P. 56(c)(2).
[3] Fed. R. Civ. P. 56(e)(2).
[4] *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994) (internal citations omitted).
[5] *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990) (internal citations and quotations omitted).

> [The parties'] burden is not satisfied with "some metaphysical doubt as to the material facts," by "conclusory allegations," by "unsubstantiated assertions," or by only a "scintilla" of evidence. We resolve factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.
>
> *****
>
> [S]ummary judgment is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant."[6]

## IV. Applicable Law and Analysis

The parties disagree whether general maritime law or Louisiana law, through the application of the Outer Continental Shelf Lands Act (hereinafter OCSLA), applies to this case. As the Fifth Circuit has recognized, however, "[t]he elements of a maritime negligence cause of action are essentially the same as land-based negligence" under Louisiana law.[7] To establish maritime negligence, a plaintiff must demonstrate that the defendant owed the plaintiff a duty, that the defendant breached that duty, that the plaintiff sustained injury, and that a causal connection exists between the defendant's conduct and the plaintiff's injury.[8] Similarly, in order to prevail on a negligence claim in Louisiana, the plaintiff must prove the same duty, breach, harm, and causation elements.[9]

---

[6] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (internal citations and quotations omitted).
[7] *Withhart v. Otto Candies, L.L.C.*, 431 F.3d 840, 842 (5th Cir. 2005); *see also Usé v. Usé*, 94-0972, p. 4 n. 2 (La. App. 1 Cir. 4/17/95); 654 So.2d 1355, 1359 n.2, *writs denied*, 95-1879 (La. 1/13/95), 95-1834 (La. 11/13/95); 662 So.2d 468.
[8] *In re Cooper/T. Smith v. Gnots-Reserve, Inc.*, 929 F.2d 1073, 1077 (5th Cir. 1991), *cert. denied*, 502 U.S. 865 (1991); *see also Dunaway v. Louisiana Wildlife and Fisheries Com'n*, 2008-1494, p. 7-8 (La. App. 1 Cir. 2/13/09); 6 So.3d 228, 233.
[9] *See, e.g., Fontenot v. Patterson Insurance*, 2009-0669 (La. 10/20/09), 23 So.3d 259, 267; *Rando v. Anco Insulations Inc.*, 2008-1163 (La. 05/22/09), 16 So.3d 1065, 1086.

*A. The Scope of the Duty Owed By An Independent Contractor to Employees of a Fellow Independent Contractor*

Under both maritime and Louisiana law, whether a duty exists is a question of law to be determined by the court.[10] Furthermore, the analysis that determines whether a duty is owed is essentially identical under either law. Under maritime law, this determination "depends upon a variety of factors, 'most notably the foreseeability of the harm suffered by the complaining party.'"[11] Foreseeability of harm is also relevant to the duty inquiry under Louisiana law, as is the "ease of association" between the plaintiff's injury and the rule of conduct that is urged.[12]

While SAS and Halliburton were each under contract with Anadarko to render certain services to Anadarko, no separate contractual relationship existed between SAS and Halliburton. As a result, the relationship between SAS and Halliburton is that of fellow independent contractors hired by a common principal. Under general maritime law, an independent contractor owes no duty to employees of a fellow independent contractor unless it exercised operational control over the work the employees performed.[13] The "operational control" test is not satisfied unless it is shown that the independent contractor determined the method by which the employees were to perform their work and instructed them accordingly.[14] Similarly, under Louisiana law, the duty owed by an independent contractor to his fellow independent contractor and its respective employees is "at the very least... the duty to refrain from gross, willful or wanton negligence, and at most the duty to refrain from creating an unreasonable risk of harm or

---

[10] *Canal Barge Co., Inc. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000); *Lazard v. Foti*, 2002-2888, p. 3 (La. 10/21/03); 859 So.2d 656, 659.
[11] *Canal Barge Co., Inc. v. Torco Oil Co.*, 220 F.3d 370, 377 (5th Cir. 2000), quoting *Consolidated Aluminum Corp. v. C.F. Bean Corp.*, 833 F.2d 65, 67 (5th Cir. 1987).
[12] *Todd v. State Through Dept. of Social Services*, 96-3090 (La. 9/9/97); 699 So.2d 35, 39.
[13] *Landry v. Huthnance Drilling Co.*, 889 F.2d 1469, 1471 (5th. Cir. 1989); *Butler v. Ensco Offshore, Co.*, 2008 WL 5395766 (W.D. La. 2008).
[14] *Id.* at 1471-72.

a hazardous condition."[15] The scope of this duty is not so broad as to impose upon an independent contractor who has knowledge of a hazardous condition, but no ability to control its existence, a duty to eliminate the hazard.[16]

Under either maritime law or Louisiana law, there is no evidence which indicates that SAS had a duty to Halliburton employees regarding risks created by elevating the CTR. It is undisputed that Halliburton owned the CTR; that Halliburton determined the method that was used to disassemble the raised CTR and instructed the plaintiff on how to do so (which included telling him to exercise extra care due to the CTR's elevation); that SAS had no oversight authority over Halliburton or the plaintiff; and that SAS was not present on the rig at any time during Halliburton's operations. These facts indicate that it was Halliburton, and not SAS, that controlled the method Halliburton employees used to split the CTR. SAS therefore owed no duty to the plaintiff under general maritime law.

The undisputed evidence also indicates that SAS had no control over the danger posed to Halliburton workers performing tasks on the elevated CTR without safety equipment. Even assuming, as the plaintiff contends, that the risk to Halliburton employees was foreseeable to SAS,[17] under Louisiana law, SAS's mere knowledge of the hazardous condition, without any ability to control or eliminate it, was insufficient to give rise to a legal duty for SAS to protect the plaintiff.

### B. The Causal Link Between SAS's Failure to Warn and the Risk to the Plaintiff

---

[15] *Lafont v. Chevron, U.S.A., Inc.*, 593 So.2d 416, 420 (La. App. 1 Cir. 1991).
[16] *See id.* at 421.
[17] While the plaintiff argues that SAS knew of the general risks posed to Halliburton employees by the elevation of the CTR, and knew that Halliburton employees would be working on the CTR without platforms or other safety devices, he has failed to present evidence that Halliburton's failure to install safety devices was, in fact, foreseeable to SAS, since both parties agree that SAS did not discuss the issue of employee safety with Halliburton.

Even assuming that SAS did have a duty to inform Noble, Anadarko, and Devin that the elevated CTR posed an increased risk of harm to Halliburton employees, there is insufficient evidence to suggest that SAS's failure to comply with this duty was the cause of the plaintiff's injury. Under Louisiana law, in order for the defendant's actions to be a cause of the plaintiff's injury, the plaintiff must prove both cause-in-fact and legal cause. To establish cause-in-fact, the plaintiff must prove that his injuries would not have occurred "but for" the defendant's substandard conduct.[18] Alternatively, where there are concurrent causes of an accident, the "substantial factor" test is used to determine causation.[19] In deciding whether a defendant's conduct was a "substantial factor" in bringing about the plaintiff's harm, courts consider "whether each of the multiple causes played so important a role in producing the result that responsibility should be imposed upon each item of conduct, even if it cannot be said definitively that the harm would not have occurred 'but for' each individual cause," as well as "whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm."[20] On the other hand, if this case is analyzed under general maritime law, as the plaintiff contends it should be, then the defendant's negligence is actionable only if it is a "legal cause" of the plaintiff's harm, which is a heightened requirement that demands "something more than 'but for' causation."[21]

Any distinction between the causation requirements of maritime law and Louisiana law, however, is irrelevant. Even under a more lenient "but for" or "substantial factor" causation inquiry, the evidence does not suggest a causal link between the plaintiff's injury and SAS's

---

[18] *Bonin v. Ferrellgas, Inc.*, 2003-3024, p. 5-6 (La. 7/2/04); 877 So.2d 89, 94.
[19] *Id.*
[20] *Id.*, quoting *Perkins v. Entergy Corp.*, 2000-1372 (La. 03/23/01), 782 So.2d 606, 612, and *LeJeune v. Allstate Ins. Co.*, 365 So.2d 471, 475 (La. 1978).
[21] *Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir. 1992), quoting *Thomas v. Express Boat Co.*, 759 F.2d 444, 448 (5th Cir. 1985).

failure to advise Noble, Anadarko, or Devin of the risks created by elevating the CTR. While the plaintiff presented evidence that SAS discussed the CTR's elevation with Noble, Anadarko, and Devin without also discussing its safety implications, he does not indicate that these three entities were unaware of the risk that workers could fall from the CTR. Furthermore, he does not show that these entities would have taken any corrective action after learning of the risk.

**V. Conclusion**

The plaintiff has failed to demonstrate that an issue of material fact exists on two elements of his claim for which he bears the burden of proof at trial. Whether under general maritime law or Louisiana law, the court finds there is no duty owed to the plaintiff by SAS as a matter of law. Further, even assuming there was a duty owed by SAS that was breached, the plaintiff has failed to meet his burden on the element of causation under either body of law. Therefore, SAS's motion for summary judgment (Rec. Doc. 130) is GRANTED and the plaintiff's claims against SAS will be dismissed with prejudice.